UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-7135-GW(PJWx) | Date | February 25, 2013 |
| Title | *Janice Tria, et al. v. Innovation Ventures, LLC, et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| Kane Tien | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Derrick F. Coleman | Gerald E. Hawxhurst |
| | Joshua P Gelbart |
| | Darin J. Lebeau |

**PROCEEDINGS:**     **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (filed 01/28/13)**

                           **DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (filed 01/28/13)**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. The above-entitled motions are taken under **SUBMISSION**.

                                                                                        :    22

                                                  Initials of Preparer    KTI

*Tria v. Innovation Ventures, LLC*, Case No. CV-11-7135 GW (PJWx)
Tentative Ruling on Motion to Dismiss For Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(h)(3)

## I. Background

Now pending before the Court are a motion to dismiss this action for lack of subject matter jurisdiction, based upon (primarily) a standing argument, and a motion to certify the proposed class in this action involving products ("Chaser®" and "Chaser *Plus*®") that Innovation Ventures, LLC ("Defendant") marketed and sold as designed to alleviate or cure the effects of "hangovers." Having initially filed this lawsuit in July 2011 in state court, on September 20, 2012, plaintiff Janice Tria ("Plaintiff"), on behalf of herself and all others similarly situated, filed a First Amended Complaint ("FAC") setting forth claims for 1) violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., 2) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., 3) violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq., 4) breach of express warranty, and 5) breach of implied warranty. *See* Docket No. 86.

## II. Analysis

### A. Motion 1

Because there is no sense in engaging in a class certification analysis if the only named plaintiff lacks standing to bring the lawsuit in question, the Court addresses Defendant's motion first. Defendant raises several arguments for why it believes that Plaintiff lacks standing to pursue either parts or all of the instant case. Before proceeding to the specifics of that argument, however, the parties debate how the Court is to decide the dispute.

In attempting to forestall Defendant's at-least-partial success on this motion, Plaintiff argues that the Court is obligated to assess evidence regarding her standing by way of using summary judgment-type standards. She is plainly incorrect that the Court is *required* to do so (though it *may* convert a Rule 12(b)(1) motion into a Rule 56 motion, *see, e.g., Spencer v. World Vision, Inc.*, 633 F.3d 723, 725 (9th Cir.) (O'Scannlain, J., concurring), *cert. denied*, 132 S.Ct. 96 (2011)). Rule 12(b)(1) motions to dismiss based

1

on an asserted lack of subject matter jurisdiction may be "facial" or "factual." *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In a factual attack on jurisdiction, 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1083 (9th Cir. 2012) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "To resolve a factual attack, 'the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations.'" *Id.* (quoting *Safe Air*, 373 F.3d at 1039); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Use of summary judgment standards is *suggested* only when "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (quoting *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987)).[1] Plaintiff's standing here is not "intertwined" with the merits. *Compare Spencer*, 633 F.3d at 725-26 (O'Scannlain, J., concurring) (involving question of whether employer was a religious entity and therefore exempt from Subchapter VI of Title 42 prohibiting employment discrimination on the basis of religion); *Bressi v. Ford*, 575 F.3d 891, 894 n.1 (9th Cir. 2009) (referencing conversion of Rule 12(b)(1) motion to summary judgment motion where issue of tribal sovereign immunity presented in context of actions taken at roadblock on state highway crossing Indian reservation); *Autery*, 424 F.3d at 955-56 (involving questions as to independent contractor-exception and discretionary function-exception to Federal Tort Claims Act); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (involving question of whether plaintiff was legal or beneficial owner of copyright); *Careau Group v. United Farm Workers of Am., AFL-CIO*, 940 F.2d 1291, 1293 (9th Cir. 1991). Instead, we have a simple question – what alleged misrepresentations did Plaintiff see and rely on, and what purchases caused

---

[1] How an *appellate* court is bound to review the facts a district court relies on in a factual Rule 12(b)(1) motion is not at issue here. *See Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("This reliance by the district court on facts outside the complaint would be futile if on review we merely looked at the factual allegations in the complaint. To best reconcile these two views of 12(b)(1) motions, we will consider items outside the pleading that were considered by the district court in ruling on the 12(b)(1) motion, but resolve all disputes of fact in favor of the non-movant.").

her damage. This is an injury-in-fact and Article III standing analysis at its plainest. *See Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) ("To establish standing under Article III of the Constitution, a plaintiff must show '(1) injury in fact; (2) causation; and (3) likelihood that the injury will be redressed by a favorable decision.'") (quoting *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006)). While injury-in-fact questions can, in some circumstances, potentially "intertwine" with the merits, *see, e.g., Wood*, 678 F.3d at 1084, *this* is not such a case.

"Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2; *cf. Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 n.3 (1992) ("*Lujan* [*v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)], since it involved the establishment of injury in fact at the summary judgment state, required specific facts to be adduced by sworn testimony; had the same challenge to a generalized allegation of injury in fact been made at the pleading stage, it would have been unsuccessful.") (emphasis omitted); *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255-56 (9th Cir. 2008); *Nuclear Info. & Resource Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 950-55 (9th Cir. 2006); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1178 (9th Cir. 2002). Thus, to the extent Plaintiff relies only on her allegations to support her standing here, she risks a morning-after headache from this litigation.

1. Chaser® / Chaser *Plus*® Purchases

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1001 n.7 (9th Cir. 2006). Here, Plaintiff is the only named representative of the putative class, and she bears the burden of demonstrating that she meets Article III standing requirements in the context of this case. *See Bates*, 511 F.3d at 985. One of the arguments Defendant makes concerning Plaintiff's standing is based upon Plaintiff's testimony indicating that she purchased only Chaser *Plus*®, not Chaser®. *See* Docket No. 112-2, at 130:3-21, 131:4-9. From this, Defendant argues that Plaintiff lacks standing to the extent she attempts to litigate this

action with respect to Chaser®. The Court agrees with Defendant.[23]

This Court has, on at least two separate occasions, taken the approach that a plaintiff has no injury-in-fact with respect to products she has not purchased, although she has purchased similar products, at least where the products she has and has not purchased are not effectively identical for purposes of the type of case brought. *See Contreras v. Johnson & Johnson Consumer Cos., Inc.*, No. 12-CV-7099 GW (SHx), Docket No. 19, at 2-3 (C.D. Cal. Nov. 29, 2012); *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx), Docket No. 212, at 2 n.2 (C.D. Cal. Apr. 12, 2012). This is consistent with Ninth Circuit law on this point, and connects up with the observation that a plaintiff's use of the class action procedure cannot serve to expand substantive rights. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001); *cf. Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 & n.4 (9th Cir. 2009). This rule applies here – Chaser® and Chaser Plus® have unquestionable distinctions in the types of statements that have been used to market or advertise those products. *See* Docket Nos. 117-10, 117-11, 117-12. At a minimum, therefore, Plaintiff does not have standing to pursue claims related to Chaser®.[4] The only question is whether the Court should allow a certain amount of time to add one or more new potential class representative(s) in light of this approach. *See* Manual For Complex Litigation (4th ed. 2004), § 21.26, at 277 (indicating that, where replacement of

---

[2] Even if the Court were required (as Plaintiff asserts, but as the Court rejects) to only assess this question through the lens of Fed. R. Civ. P. 23, the Court would conclude that Plaintiff would be unable to demonstrate either typicality or adequacy with respect to products she herself had not purchased, for reasons addressed in more detail in connection with Motion 2. *See* Fed. R. Civ. P. 23(a)(3), (4). But the Court does not agree with the position that the issue is only relevant to class certification under Rule 23 (though it is *also* relevant to that). While it may be expedient to allow a single class representative to resolve, for an entire class of people, issues in common with a range of different products sold by the same entity, the Court does not understand expedience to trump Article III's standing requirements. *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1052 (9th Cir. 2008) (Duffy, D.J., dissenting) ("Time and again, the Supreme Court has refused to allow the arguments of 'piecemeal litigation' or 'convenience and efficiency' to negate the fundamental, constitutional requirement that plaintiffs present an actual case or controversy in order to have Article III standing.").

[3] The Result might be different if there were virtually no material difference between the products vis-à-vis ingredients *and* the advertisements/claims made by Defendant as to them. *See* discussion, *infra*.

[4] Whether viewed as an Article III-related failing or a more general reliance and/or causation defect, Defendant also appears to at least have an argument that Plaintiff may have some difficulty recovering *vis a vis* her Chaser *Plus*® purchases because she made those purchases only after hearing *friends* tell her that the product worked.

a representative is appropriate, "courts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative who meets the Rule 23(a) requirements").

        2. <u>Injunctive Relief</u>

Defendant also argues that Plaintiff has no standing to pursue injunctive relief in this action because Defendant has taken the Chaser products off the market. Standing must be shown for each form of relief sought. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011); *Bates*, 511 F.3d at 985.

> The standing formulation for a plaintiff seeking prospective injunctive relief is simply one implementation of [the] requirements [set forth in *Lujan*]. The plaintiff must demonstrate that he has suffered or is threatened with a "concrete and particularized" legal harm, coupled with "a sufficient likelihood that he will again be wronged in a similar way…." [H]e must [also] establish a "real and immediate threat of repeated injury." "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." However, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."

*Bates*, 511 F.3d at 985 (omitting internal citations) (quoting *Lujan*, 504 U.S. at 560, *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 111 (1983), and *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). However, standing is assessed as of the time the plaintiff files suit. *See Lomax*, 471 F.3d at 1015 ("When evaluating whether [the standing] elements are present, we must look at the facts 'as they exist at the time the complaint was filed.'" (quoting *Lujan*, 504 U.S. at 569 n.4); *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (recent implementation of temporary policy insufficient to eliminate standing as of time suit filed).

Here, Defendant's injunctive relief-related argument does not appear to consist of a contention that, at the time she filed suit, Plaintiff had no basis to fear repeated injury. In fact, as addressed further below, Plaintiff filed suit in July 2011, and Defendant contends that the products were not taken off the market until August 2011. Instead, Defendant appears to argue that Plaintiff *no longer* has "standing" because Defendant has voluntarily ceased selling the Chaser products. Voluntary cessation during the course of a lawsuit, however, raises an issue of *mootness*, not *standing* (which, again, is assessed as of the time of the suit's filing). While Defendant might be correct that Plaintiff would

5

bear the burden of demonstrating her standing as of the time she filed suit, *see Nelsen v. King Cnty.*, 895 F.2d 1248, 1251 (9th Cir. 1990), a mootness argument centered on the voluntary cessation of allegedly wrongful conduct places the burden on the party arguing mootness – here, Defendant.[5]

In other words, we are now well past the commencement of this action, and whether or not Plaintiff had standing to pursue injunctive relief at that time, the issue Defendant now argues is best construed as a mootness challenge (which may also be challenged by way of a Rule 12(b)(1) motion, *see White*, 227 F.3d at 1242). "Federal courts lack jurisdiction to consider moot claims." *Rosemere Neighborhood Ass'n v. U.S. Envtl. Protection Agency*, 581 F.3d 1169, 1172 (9th Cir. 2009). "A claim is moot if it has lost its character as a present, live controversy." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997). Thus, "[i]f an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Id.*

> The Supreme Court has made clear that the standard for proving that a case has been mooted by a defendant's voluntary conduct is "stringent":
>> "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203…(1968). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Id.*

*White*, 227 F.3d at 1243 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)); *see also Rosemere Neighborhood*, 581 F.3d at 1173; *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1237-38 (9th Cir. 1999).

Again, "[t]he party alleging mootness bears a 'heavy burden' in seeking dismissal." *Rosemere Neighborhood*, 581 F.3d at 1173 (quoting *Friends of the Earth*, 528 U.S. at 189). "It must show that it is 'absolutely clear' that the allegedly wrongful

---

[5] To the extent Defendant is understood to actually advance a standing argument based not on cessation of its own activities, but instead on the assertion that Plaintiff herself has no threatened future harm because she is, in a sense, "on to" Defendant's alleged fraud, the Court rejects that argument as a basis for avoiding injunctive relief. *See Contreras*, No. 12-CV-7099 GW (SHx), Docket No. 19, at 3 (C.D. Cal. Nov. 29, 2012); *see also Henderson v. Gruma Corp.*, CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077, *18-21 (C.D. Cal. Apr. 11, 2011); *Red*, No. CV 10-1028-GW (AGRx), Docket No. 232, at 6-7.

behavior will not recur if the lawsuit is dismissed." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189). The question is whether Defendant has met that burden here. Merely ceasing sales of a product does not necessarily satisfy a defendant's mootness-related burden. *See Lynn v. Biderman*, 536 F.2d 820, 824 (9th Cir. 1976) (holding cessation of land sales not sufficient to demonstrate mootness without demonstrating "no reasonable expectation that the wrong will be repeated"); *cf. Affordable Media*, 179 F.3d at 1237 (concluding that cessation of sales did not moot need for injunctive relief where it did not account for mandatory component of injunctive relief requiring repatriation of assets secreted off-shore, but noting that "cessation of sales might possibly effect the need to restrain them from engaging in prohibited business practices").

While it may be true that Defendant has voluntarily ceased selling Chaser products, at one point in this litigation Defendant asserted that it was at least on the brink of selling – or, in fact, had already sold – that product line to a third party. *See* Docket No. 20, at 4 n.6. Even if Plaintiff has not presented any evidence suggesting that Defendant will renew its sales activities (and, again, it is *not* her burden to do so in the context of mootness analysis[6]), before the Court could conclude that it is "absolutely clear" that Defendant's sales activities will not recur, the Court would want to know what happened to that actual or proposed sale. It might also expect a more detailed presentation on the status of the Chaser products, and Defendant's related intentions.[7] At this point in time, it appears the only evidence Defendant directs the Court to on this point (at least as submitted with its opening brief) is a short passage in the under-seal

---

[6] The Ninth Circuit has made clear that *Plaintiff's* failure to demonstrate evidence of likely repetition of the targeted conduct would not be sufficient to satisfy *Defendant's* burden on this question. *See Rosemere Neighborhood*, 581 F.3d at 1173-74; *Affordable Media*, 179 F.3d at 1238.

[7] Although holding a defendant arguing mootness from the voluntary cessation of activities to an exacting burden in demonstrating such a state of affairs is one way to avoid such defendant from avoiding judicial action through manipulative tactics, it is seemingly not the only way of doing so. A re-initiation of the activities Plaintiff complains about in this lawsuit would, at a minimum, obviously allow Plaintiff (or any other affected consumer) to file suit again and, if the court handling that action is made aware of Defendant's tactics herein (assuming that it is a court other than this Court), would seem to be a rock-solid basis for a *sizable* sanctions award. The Court might ask the parties whether they are aware of any case discussing this possible way of handling voluntary cessation-based mootness issues. Alternatively, if Defendant truly knows now that it will not reinitiate sales of its Chaser products, it should be willing to consent to an injunctive order – or some other form of stipulated court order – precluding it from doing so, such that a future violation of that order by way of re-initiation of sales would amount to contempt of that order, thereby providing a basis for the aforementioned sanctions prospect.

deposition transcript of Carl Sperber, in which he indicates that the product line was "discontinued" at some point in 2010 or 2011.[8] *See* Docket No. 146-1, Exh. B, at 33:17-34:7.

Absent such a presentation, it is not clear that Defendant can fit its own cessation within the Ninth Circuit cases finding sufficient mootness from such events. For instance, the Ninth Circuit concluded that the practice involved in *White* was mooted where "it is clear that the Achtenberg memorandum represents a permanent change in the way HUD conducts FHA investigations, not a temporary policy that the agency will refute once this litigation has concluded" and where the memorandum was "broad in scope and unequivocal in tone." *White*, 227 F.3d at 1243-44; *see also Jones Intercable of San Diego, Inc. v. City of Chula Vista*, 80 F.3d 320, 328 (9th Cir. 1996) (holding claims for injunctive and declaratory relief moot where plaintiff had sold relevant cable infrastructure and "no longer ha[d] the ability or the desire to operate a cable system within the City"); *Am. Tunaboat Ass'n v. Brown*, 67 F.3d 1404, 1407 (9th Cir. 1995) (concluding appeal moot where National Marine Fisheries Service's directive – subject of requested preliminary injunctive relief – was only in effect in year that had now passed); *Shyman v. Fleming*, 163 F.2d 461, 464 (9th Cir. 1947) ("The cessation of price control over sales of whisky renders moot questions raised as to the injunctive relief granted below."). Thus, the Court would invite further argument from Defendant on this point, but, at this stage, it would reject Defendant's contention in this regard.

### 3. Monetary Relief

Defendant also asserts that Plaintiff does not seek damages or monetary relief in this case because she testified that this case is "not about" money. *See* Docket No. 112-2,

---

[8] With its Reply brief, Defendant submitted a declaration from Scott Henderson, but the Court cannot uncritically accept that evidence. First, a moving party cannot wait until its Reply brief to submit new evidence. Second, even in that declaration, Mr. Henderson only indicates (as pertinent to the necessary analysis) that Defendant stopped selling Chaser products as of August 30, 2011 (i.e., *after* Plaintiff had filed suit, meaning that this decision cannot have affected her standing), that it "has not sold or marketed [the products] to the public since that day," and that this decision "is not a temporary decision," rather Defendant "does not intend to resume sales or marketing of" the products. Henderson Decl. (Docket No. 147-4) ¶¶ 2-4. At a minimum, before the Court would allow this declaration to sway its decision on this point, the Court would allow Plaintiff a further opportunity to brief the issue (ideally comparing Defendant's specific evidence on this point to other cases addressing mootness from voluntary cessation). The Court would also need to hear more about Defendant's earlier efforts to sell the Chaser products to a third party, as addressed further *supra*.

at 153:20-154:9.[9] Yet, the operative complaint in this action, the FAC, still plainly contains a request for damages and restitution, among other remedies. *See* FAC, at 19:16-19.[10] In the absence of any authority indicating that the Court must understand Plaintiff's testimony in the way Defendant construes it, the Court views her testimony only to indicate that money is not a primary concern of hers in this action or the main point of the action, not that she has abandoned any request for it.[11] If, indeed, that is Plaintiff's intention, the Court would expect that the parties could reach a stipulation on that point. Until the point that such a stipulation is presented to the Court or Plaintiff otherwise unequivocally abandons any intent to obtain a monetary recovery, the Court will not adopt Defendant's view on this point.

### B. Motion 2

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[12] and at least one of the subparagraphs of Rule 23(b). *See id.* at 1234. Here, Plaintiff attempts to satisfy Rule 23(b)(3), which allows for certification where questions of law or fact common to members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See In re Northern Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.

---

[9] Under at least *Kwikset Corp. v. Superior Court (Benson)*, 51 Cal.4th 310, 322 (2011), Plaintiff would seemingly have a basis for some form of monetary recovery, assuming the truth of her allegations.

[10] Indeed, Plaintiff specifically sought leave (which the Court granted) to add a claim for damages under the CLRA. *See* Docket Nos. 84, 84-1.

[11] Similarly, whether or not Plaintiff "believes" she suffered financially because of her purchases of Defendant's product, *see* Docket No. 112-2, at 146:23-147:2, is somewhat irrelevant to whether she has, in fact, in a legally-cognizable manner, suffered in that regard. *See also* Docket No. 135-2, at 150:13-21.

[12] Rule 23(a) requires that the party seeking certification show:
    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;
    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4) the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996). The Court is of course permitted to consider any material necessary to its determination, though it should not engage in a trial of the merits. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011) (noting that the "rigorous analysis" required at class certification will "[f]requently…entail some overlap with the merits of the plaintiff's underlying claim")

If the Court adopts the above approach in connection with Motion 1, the scope of the class certification motion would be reduced to some degree. It would involve only Chaser *Plus*® and, depending upon how the Court resolves the voluntary cessation issue, may not involve any request for injunctive relief. Plaintiff also seeks only a California class at this point in time, though she appears to intend to leave open the possibility of adding a nationwide class at some later date. Even as to that limited scope, however, problems related to (at least[13]) Plaintiff's "typicality" and "adequacy" would appear to preclude class certification here.

    1. Typicality

While it is true that "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct," *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted), defenses unique to the proposed class representative can make that individual (or entity) unsuitable as a representative. *See Ellis*, 657 F.3d at 984; *see also Hanon*, 976 F.2d at 508 (citations and internal quotation marks omitted) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.").

Because of the limitations in the scope of Plaintiff's Article III standing under the

---

[13] Any failure of the Rule 23(a) requirements can serve to preclude certification. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 n.5 (2011) ("In light of our disposition of the commonality question, however, it is unnecessary to resolve whether respondents have satisfied the typicality and adequate-representation requirements of Rule 23(a)."). As such, *at this time*, the Court has no need to consider "numerosity," Fed. R. Civ. P. 23(a)(1), "commonality," Fed. R. Civ. P. 23(a)(2), or whether Plaintiff can satisfy the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3). Likewise, there is no need for the Court to address the evidentiary objections advanced in connection with the class certification motion.

approach to Motion 1 set forth above, Defendant's "typicality"-based class certification argument loses some of its steam. Nevertheless, Defendant has presented the Court with evidence that at least Plaintiff's reliance will be a significant issue in this case, both because, by having purchased only Chaser *Plus®*, she could only litigate statements related to that product, and because there is at least some evidence that she relied, in making her purchasing decision, on *her friends'* assertions regarding the product.[14] *See* Docket No. 112-2, at 113:12-16, 114:7-115:6, 116:8-22, 157:13-17, 207:12-17. *But see* Tria Decl. (Docket No. 117-2).[15] Plaintiff has not sufficiently demonstrated an advertising/marketing campaign sufficient to negate factors related to her own reliance. *Cf. Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594-96 (9th Cir. 2012) ("We hold that…the district court abused its discretion in finding that common issues of fact predominate because the <u>small scale of the advertising campaign</u> does not support a presumption of reliance.") (emphasis added). In fact, it is somewhat difficult to discern any response from her to Defendant's "unique defense"-based typicality argument. Thus, Plaintiff appears to fail Rule 23(a)(3)'s "typicality" requirement for a class representative.

    2. <u>Adequacy</u>

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) ("Whether the class representatives satisfy the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.") (omitting internal quotation marks) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)). While this is the usual enunciation of the "adequacy"

---

[14] Even if reliance is unnecessary for some of the forms of relief Plaintiff seeks, Plaintiff's "adequacy" remains a serious concern.

[15] That Tria testifies otherwise in her class certification declaration obviously raises issues at least relevant to the "sham" declaration doctrine and, in any event, does not detract in any way from the conclusion that this will be a major issue unique to Plaintiff's own situation. The Court need not resolve Defendant's objection to this testimony (see Docket No. 132), at least at this time, for it to reach that conclusion.

requirement, the Court also observes that Rule 23(a)(4) more generally requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A proposed class representative's relative level of engagement in and familiarity with the litigation can also serve as a proper consideration. *See In re Cooper Companies Inc. Securities Litigation*, 254 F.R.D. 628, 636 (C.D. Cal. 2009).

Other circuits agree that the "adequacy" inquiry can be more open-ended. For instance, in *Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009), the Fourth Circuit opined as follows:

> To satisfy Rule 23(a)(4), a class representative must, among other factors, be of a character to vigorously pursue the case. Findings that a represent-tative lacks sufficient interest, credibility, or either knowledge or an understanding of the case – although a knowledge or understanding of all the intricacies of the litigation is not required – are grounds for denying class certification. The analysis is intended "to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney."

*Id.* at 385 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1766 (3d ed. 2005)). The Second and Fifth Circuits have taken a similar approach. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995) ("[C]lass certification may properly be denied where the class representatives ha[ve] so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys."); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982) ("The adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees."); *see also Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("Th[e] 'adequacy of representation' analysis 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'") (quoting *In re HealthSouth Corp. Secs. Litig.*, 213 F.R.D. 447, 460-61 (N.D. Ala. 2003)).

The Court has concerns both about Plaintiff's familiarity with this litigation and

involvement in its progression and in the conflict she apparently has – despite her protestations to the contrary – with the class in terms of protecting her own individual interests in a way that may wind up penalizing the class. As to the latter, the Court specifically refers to Plaintiff's conduct in connection with the discovery dispute arising out of deposition subpoenas Defendant issued to Plaintiff's family members.[16] Plaintiff may want to "spin" her behavior in connection with this discovery issue in a different light at this stage, *see* Tria Supp. Decl. (Docket No. 148-2) ¶¶ 3-5,[17] but the transcripts of the hearings before Judge Walsh do not back her up in this regard. *See* Docket No. 140, at 14:4-16:25, 21:11-19, 23:8-16; Docket No. 141, at 15:20-16:4; *see also* Docket No. 139, at 7:21-8:12, 18:12-19:7. If a plaintiff is willing to sacrifice aspects of a litigation designed to assist an entire class of individuals in order to favorably affect concerns related only to her, she cannot be an adequate representative. *Cf. Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (9th Cir. 2011) ("[C]lass counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representative of the class. There is no basis for confidence that they would prosecute the case in the interest of the class, of which they are the fiduciaries....") (omitting internal citation) (Posner, J.); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 498 (7th Cir. 2013) ("Not any ethical breach justifies the grave option of denying class certification. No doubt, misconduct that prejudices the class or creates a direct conflict between counsel and the class requires such denial under Ashford Gear II's serious doubt standard."); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.22 (11th Cir. 2009) (declining to address argument that class representative was not adequate "due to evidence suggesting that [the plaintiff's] alleged failure to disclose various facts in discovery render[ed] him insufficiently credible to represent the class" because of numerous other reasons for vacating class certification).

Moreover, although the Court does not believe that Plaintiff has abandoned her

---

[16] Although Plaintiff argues that Defendant should not have been able to depose her family members, she must have either argued that position to Magistrate Judge Walsh and lost (and not brought the issue up before this Court for review) or not argued it all. Either way, Plaintiff may not be heard to now complain about whether such depositions were permissible.

[17] The Court sees no need to rule on Defendant's objections (*see* Docket No. 162) to Plaintiff's supplemental declaration.

claims to monetary relief, the evidence certainly suggests that it is not particularly important to Plaintiff, in terms of the context of this case.[18] In fact, at multiple points in her deposition she testified that she "d[id]n't really have a goal" in this lawsuit, *see* Docket No. 112-2, at 44:20-21, 45:10-12, 46:19-22, though she said this in the context of questioning why a company should be allowed to place a product on the market that does not work. She also testified that she "[did not] know" whether she was "willing to go to trial in this case." *See* Docket No. 112-2, at 163:10-12.

As to the other issue relating to Plaintiff's adequacy (her relative level of familiarity with the case), there is evidence that she is, at the very least, somewhat unfamiliar with what relief is at issue in this case, had not even seen the complaint (the allegations of which contradict her actual experience in certain key respects) until approximately a year after filing suit, does not appear to have known that her counsel had attempted to appeal the Court's earlier order denying remand of this matter, and was (at least at the time of her deposition) unfamiliar with the fact that she even had any obligations with respect to the class she was seeking to represent. *See* Docket No. 112-2, at 38:5-22, 90:5-25, 92:18-93:10, 153:20-22, 157:1-3, 197:15-198:19; *see also id.* at 89:5-11, 196:23-197:3, 214:8-18. Just where the dividing line is between what a class representative plaintiff should know herself and what she can safely leave to her counsel is somewhat unclear but, again, this is not the only reason the Court has for questioning Plaintiff's adequacy.

Plaintiff, of course, offers carefully worded assurances that she will be a committed class representative in this case. *See* Tria Decl. (Docket No. 117-2) ¶ 3; Tria Supp. Decl. (Docket No. 148-2) ¶ 10. Placed up against the foregoing observations, the Court has significant reason to question the accuracy or reliability of that contention.

In sum, there is serious reason to doubt Plaintiff's adequacy within the meaning of Rule 23(a)(4). For that reason alone, and certainly in combination with the "unique defenses" problem addressed under "typicality," the Court would conclude that Plaintiff will not be a suitable class representative. As such, it would deny class certification at this time.

---

[18] Nevertheless, Plaintiff seeks certification pursuant to Fed. R. Civ. P. 23(b)(3), *not* Fed. R. Civ. P. 23(b)(2), the provision focused upon class injunctive (or declaratory relief) claims.